McCotter *vs.* The Mayor &c. of the City of New York.

Giving authority to an agent to contract with a third person will not entitle the latter to sue as upon a contract consummated, before the agent has acted.

A proposal, made by the plaintiff, for the sale to the city of New York of certain property owned by him, at a specified price, was withdrawn before it was accepted or acted upon by the common council. Subsequently, and when there was no proposal of the plaintiff before the common council by which he was bound, the common council passed an ordinance authorizing and directing the comptroller of the city to purchase from the plaintiff all the land situated on Ward's island, not owned by the city, &c. to which the plaintiff could furnish a good title, and to issue city bonds for the payment of the same. The plaintiff, without waiting for any action to be had under this ordinance, by the comptroller, procured from the counsel to the corporation his certificate as to the sufficiency of the title, and tendered conveyances of the premises and demanded payment of the purchase money in accordance with the terms of the ordinance. The corporation refused to accept the deeds, or make the payment. *Held* that there was no valid and binding contract, mutually obligatory upon the parties at the time of passing the ordinance; and that the plaintiff's subsequent repentance or change of purpose and tender of conveyances, did not make a valid contract as of the time of the passage of the ordinance, or based upon it.

*Held also*, that the ordinance made the comptroller the agent of the city to negotiate with the plaintiff, and purchase from him the property; giving him unlimited discretion as to price and terms of payment; only directing payment to be made in city bonds; and that until the comptroller, acting under the authority conferred by the ordinance, had concluded an agreement with the plaintiff for the purchase of the property, an action for a specific performance would not lie.

THIS action was for the specific performance of an alleged contract for the sale by the plaintiff to the defendants of a part of "Ward's island."

The plaintiff was the owner of a part, and held executory contracts for the purchase of certain other parts of the island from the owners thereof. One Robert Minturn also owned a portion of the island, and the residue belonged to the city of New York and the commissioners of emigration. The sale, as alleged by the plaintiff, embraced those portions of the island which he owned, and of which he held the contracts of purchase. Prior to October 16th, 1857, the plaintiff pro-

posed in writing to sell to the defendants certain parts of the island, but the paper writing having been lost, its precise terms are not known. The board of councilmen and the board of aldermen thereupon passed a resolution, which was approved by the mayor on the 31st day of December, 1857, authorizing and directing the mayor to appoint an arbitrator to meet with one to be appointed by the plaintiff, the owner of all the private property and water rights not owned by the commissioners of emigration, or by the city of New York, on Ward's island, with power to the two arbitrators, if they could not agree, to select a third, provided said plaintiff could give such satisfactory title as should be approved by the corporation counsel, and "said decision shall be binding for the purchase of said property by the corporation of the city of New York." Arbitrators were appointed in pursuance of the resolution, who, on the 13th. day of February, 1858, made their award and appraised the "value of the land, owned or claimed to be owned by the said McCotter, or to which he may furnish a good and valid title, and situate on said island, consisting of thirty-one acres, one rood and thirty perches, be the same more or less," at $2500 per acre, and "the value of the water rights, and land owned or claimed to be owned by said McCotter, to which he may furnish a good and valid title, situate on said island, consisting of forty-eight acres, three roods, sixteen and one-quarter perches, be the same more or less," at $1000 per acre. The appraisal did not include the land owned by Minturn, on the island. The resolution authorizing said appraisal and purchase was rescinded by a resolution adopted by the board of aldermen, February 11, 1858, by the board of councilmen, March 2, 1858, and approved by the mayor, March 5, 1858. About the 17th of May, 1858, the plaintiff, by way of compromise, proposed to the defendants in writing to take $1500 per acre for upland, roads and water grants, for all to which he should give or cause to be given satisfactory title, and to cancel the claim he had against the city in accordance with

the award of arbitrators, upon condition that it could be settled up and consummated at once, and without delay. On the 27th day of May, 1858, the plaintiff by letter addressed to the board of aldermen withdrew the last proposition, and claimed the full award made by the arbitrators.

By resolution adopted by the board of councilmen on the 7th of June, 1858, by the board of aldermen on the 11th of July, 1858, and finally passed over the veto of the mayor, on the 4th of August, 1858, the comptroller was "authorized and directed to purchase from the plaintiff all the land situated on Ward's island not now owned by the city of New York, or by the commissioners of emigration, including upland, roads and water grants, &c.," to which the said plaintiff could furnish a good and sufficient title, to be approved by the counsel for the corporation, and to issue city bonds at —— per cent for the payment of the same, "upon the said McCotter withdrawing all and any claim or suit he may have against the city, by virtue of any previous arrangement or agreement with the city government."

On the 18th of October, 1858, the plaintiff procured from the counsel to the corporation his certificate to the sufficiency of the title to the several parcels of land proposed to be conveyed to the defendants, and caused and procured to be executed, and tendered to the defendants, conveyances from himself and the several owners thereof of several parcels of land, and demanded payment therefor in accordance with the terms of the last resolution of the common council. The defendants refused to accept the deeds or make the payments. The plaintiff, at the same time, tendered a release of all claims under the award.

This suit was brought to compel the defendants to accept said conveyances, and to pay for the said land in pursuance of the resolution of the common council finally adopted on the 4th of August, 1858. The cause was tried by a referee, who decided that the proposition of the plaintiff, in connection with the resolution of the 4th of August, 1858, consti-

tuted a valid and binding contract, mutually obligatory upon the parties, and judgment was given ordering the defendants specifically to perform the contract thus established, and to accept the said conveyances, and to pay for the said land the sum of $138,309.25; and from that judgment the defendants appealed.

*Anderson & Ely,* for the appellants.

*Lord & McMahon,* for the respondents.

*By the Court,* ALLEN, J.   The rights and liabilities of the parties under the appraisal of the arbitrators selected by the mayor and the plaintiff, are not involved in this appeal. The plaintiff claims, in his complaint, the performance of an entirely different contract, and the referee in his report treats the arbitration and the contract to purchase under it as abandoned, and he held the defendants to the fulfillment of what is claimed and alleged to be a substituted contract, in lieu of it.   The plaintiff has not at any time undertaken to carry out and complete the sale and make title to the premises under the award and appraisement, and the referee has not passed upon the rights of the parties under that contract, or the ability of the plaintiff to perform on his part, or the liability of the defendants under that contract.   The referee has merely found that the proposal and acceptance of the proposition and the appointment of arbitrators under the resolution of the common council, and their award and appraisal in pursuance of this authority, constituted a valid contract between the parties.   But this legal conclusion does not enter into or make a part of the judgment given in the action, except, it may be, as an inducement and quasi consideration of the subsequent agreement which he finds to have been made as a substitute for that.   The proposition of the plaintiff, which preceded and induced the resolution of the common council for the appointment of the appraisers, having

been lost, its terms and the extent of the property or interest in the island proposed to be sold, is not known. But the resolution of the common council is for the purchase, at a price to be determined by arbitrators, of " all the private property and water rights not owned by the commissioners of emigration, or by the city of New York, on Ward's island, provided said McCotter can give such satisfactory title as shall be approved by the corporation counsel." Under this resolution, which is the basis of the contract and expresses its terms, the city was not bound to take any part less than all the private property on the island not owned by the city or the commissioners of emigration; and the agreement was conditional, depending on the ability of the plaintiff to make title to the entire property thus agreed to be purchased. The appraisal did not include that part of the island owned by Mr. Minturn, which was clearly embraced in the proposal of the common council, and there is no pretense that the plaintiff now is, or ever has been, able to give to the city a satisfactory or any title to the Minturn property. It is difficult, therefore, to see how the plaintiff could, had he undertaken to do so, have entitled himself to any relief under this resolution, and the acts of the arbitrators under it. But it is sufficient that the plaintiff in his complaint, and the referee in his report, make the right to relief to rest upon the subsequent negotiations and acts of the parties, and we can only review the case thus made and presented. Perhaps upon a second trial the action will be tried upon a different theory, and other facts will be disclosed, which will essentially vary the case and relieve it of some of the difficulties which now seem to embarrass the plaintiff's right to any relief under the first contract, and the appraisal of the arbitrators.

Whatever may have been the power of the common council to purchase the property in question—and of this power there is probably no reasonable doubt, although I do not propose to examine or consider that question—it is very evident that there was no contract or agreement ever made for the

purchase by the defendant of the property, a conveyance of which was tendered by the plaintiff, at fifteen hundred dollars per acre, or any other price. The minds of the parties never met in any agreement for the purchase and sale of the property. No proposal by the one was ever accepted by the other. The proposal of the plaintiff to sell at the price named, was withdrawn before it was accepted or acted upon by the defendants. It was revocable until actually acceded to by the latter, and when it was withdrawn, the common council had nothing to act upon, and could only in terms make a proposition to the plaintiff to be accepted or rejected by him if he chose to continue the negotiations. This proposal, if one was made, bound no one until formally accepted by the plaintiff. When the resolution of the common council of August, 1858, was adopted, there was no proposal of the plaintiff pending, by which he was bound, and the defendants, had the common council at that time in terms acceded to the proposal of the plaintiff before then made and withdrawn, and notified him of such acceptance, could not have compelled him to perform on his part. His subsequent repentance, or change of purpose, and tender of his conveyances in October, did not make a valid contract as of the time of the passage of the resolution, or based upon it.

But there are other difficulties. The offer of the plaintiff of May 17th, 1858, was to take $1500 per acre for the land, provided it could be settled up and fully consummated at once. This proposition was never acted upon; or if acted upon, was never accepted. The resolution of the common council which is relied upon as an acceptance, makes no allusion or reference to this proposal, or to any price to be paid for the land. It simply authorizes the comptroller to purchase of the plaintiff all the land on Ward's island to which he can give a good title. It makes the comptroller the agent of the city to negotiate with the plaintiff, and purchase from him the property, giving him unlimited discretion as to price and terms of payment, only directing payment to be in city

McCotter *v.* The Mayor &c. of New York.

bonds. It does not even appear that the common council or any agent of the city ever communicated the resolution to the plaintiff or conferred with him on the subject. It was not an act designed to influence the plaintiff or to be communicated to him, but had respect solely to the agent who was empowered to act in the premises. When it shall appear that the comptroller, acting under this resolution, and the authority conferred by it, has concluded an agreement with the plaintiff for the purchase of the property, the plaintiff will have at least a plausible claim for relief, but not upon the ground that his proposal to sell at a given price has been specifically and in terms accepted by the defendant.

Authority to an agent to contract, cannot entitle a third person to sue as upon a contract consummated. A. may may empower his coachman to buy a horse of B. without subjecting himself to an action at the suit of B. for the value of the horse, although the directions may have been given to the coachman, because B. had before offered to sell to A. at a price named by him. All that the common council has done to subject the city to this action is to empower its financial agent to purchase the property. That agent has not acted, and it is for the defendant alone to put its agent in motion. The plaintiff has no power to coerce action on the part of the agent, or right of action against the city, by reason of that act of the common council.

The judgment must be reversed, and a new trial granted; costs to abide the event.

[NEW YORK GENERAL TERM, November 4, 1861. *Clerke, Sutherland* and *Allen,* Justices.]